**No. 25-13764**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellant*

v.

OMAR SANTOS and AMANDA CLEMENTS,

*Plaintiffs-Appellees.*

---

On Appeal from the United States District Court for the
Southern District of Florida, Case No. 1:19-cv-23084-KMW

---

## OPENING BRIEF FOR DEFENDANT-APPELLANT
## EXPERIAN INFORMATION SOLUTIONS, INC.

---

A.M. Cristina Pérez Soto
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
(305) 714-9700
cperezsoto@jonesday.com

Nathaniel P. Garrett
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104
(415) 626-3939
ngarrett@jonesday.com

Daniel Paul Johnson
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 394-7217
dpjohnson@jonesday.com

*Counsel for Appellant Experian Information Solutions, Inc.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant Experian Information Solutions, Inc. provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

1. Aytch Lett, Enjoliqué—United States Magistrate Judge for the Southern District of Florida.

2. Baron & Budd, P.C.—Counsel for Appellees.

3. Central Source, LLC—U.S.-based indirect subsidiary of Experian plc that is not wholly owned.

4. Clements, Amanda—Appellee.

5. Del Riego, Alissa—Counsel for Appellees.

6. Experian Holdings, Inc.—Parent company of Appellant Experian Information Solutions, Inc.

7. Experian Information Solutions, Inc.—Appellant.  Experian Information Solutions, Inc. is a wholly owned subsidiary of Experian Holdings, Inc., and the ultimate parent company is Experian plc.

8.  Experian plc (EXPN:LON)—Indirect parent company of Experian

    Holdings, Inc., and ultimate parent company of Experian Information

    Solutions, Inc.

9.  Garrett, Nathaniel P.—Counsel for Appellant.

10. Gravante, John—Counsel for Appellees.

11. Healthcare Revenue Recovery Group, LLC d/b/a ARS Account

    Resolutions Services ("ARS")—Former defendant in the district court.

    According to ARS's disclosure in the district court, no publicly

    owned company owns 10% or more of its stock.

12. Johnson, Daniel Paul—Counsel for Appellant.

13. Jones Day—Counsel for Appellant.

14. Mann, Jonas P.—Counsel for Appellees.

15. McCarty, Dennis—Counsel for Appellees.

16. McCarty Raburn PLLC—Counsel for Appellees.

17. New Management Services LLC—U.S.-based indirect subsidiary of

    Experian plc that is not wholly owned.

18. Online Data Exchange LLC—U.S.-based indirect subsidiary of

    Experian plc that is not wholly owned.

C-2 of 3

19. Opt-Out Services, LLC—U.S.-based indirect subsidiary of Experian plc that is not wholly owned.

20. Pérez Soto, Ana Maria Cristina—Counsel for Appellant.

21. Podhurst Orseck, P.A.—Counsel for Appellees.

22. Prieto, Peter—Counsel for Appellees.

23. Raburn, Jonathan—Counsel for Appellees.

24. Santos, Omar—Appellee.

25. Silverio, Dayron—Counsel for Appellees.

26. Tamburelli, Adam—Counsel for Appellees.

27. Taylor, William R.—Counsel for Appellant.

28. Tellis, Roland—Counsel for Appellees.

29. VantageScore Solutions LLC—U.S.-based subsidiary of Experian plc that is not wholly owned.

30. Vogt, John—Counsel for Appellant.

31. Weinshall, Matthew P.—Counsel for Appellees.

32. Williams, Hon. Kathleen M.—United States District Judge for the Southern District of Florida.

No other persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

C-3 of 3

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Experian requests oral argument.  This appeal presents important questions about the validity and enforceability of an arbitration agreement. Oral argument will assist the Court in resolving the questions presented.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION ........................................................3

STATEMENT OF THE ISSUES ..............................................................4

STATEMENT OF THE CASE..................................................................4

      A.     Factual Background ........................................................4

           1.     Facts Pertaining to Omar Santos...........................4

           2.     Facts Pertaining to Amanda Clements ................7

      B.     Procedural History ........................................................10

STANDARD OF REVIEW ......................................................................14

SUMMARY OF ARGUMENT................................................................14

ARGUMENT..............................................................................................15

I.     Under Either Agreement, the Parties Clearly Delegated
      Litigation-Conduct Waiver to the Arbitrator, Requiring
      Reversal. ....................................................................................16

II.    Independently, Santos and Clements Are Bound by the 2023
      Agreement, Which Expressly Delegates Waiver. ................26

      A.     The 2023 Agreement Applies to Plaintiff Santos Because
           He Formed a New Contract with Experian When He
           Enrolled in Boost ........................................................26

      B.     Clements Also Agreed to Be Bound by the Delegation
           Clause of the 2023 Agreement........................................30

CONCLUSION ..........................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Attix v. Carrington Mortg. Servs., LLC,*
35 F.4th 1284 (11th Cir. 2022).........................................................2, 16, 18, 23

*Bearden v. E.I. du Pont de Nemours & Co.,*
945 F.3d 1333 (11th Cir. 2019)..........................................................................22

*Blanton v. Domino's Pizza Franchising LLC,*
962 F.3d 842 (6th Cir. 2020).............................................................................25

*City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.,*
82 F.4th 1031 (11th Cir. 2023)...........................................................................20

*Coinbase, Inc. v. Bielski,*
599 U.S. 736 (2023).............................................................................................4

*Coinbase, Inc. v. Suski,*
602 U.S. 143 (2024)...........................................................................................17

*Creason v. Experian Info. Sols., Inc.,*
722 F. Supp. 3d 760 (W.D. Ky. 2024) ...............................................................21

*Feldman v. Google, Inc.,*
513 F. Supp. 2d 229 (E.D. Pa. 2007)................................................................29

*Garcia v. Harmony Healthcare, LLC,*
2021 WL 1610093 (M.D. Fla. Apr. 26, 2021)...................................................31

*Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.,*
994 F.3d 1181 (10th Cir. 2021).........................................................................25

*Gorss Motels, Inc. v. Safemark Sys., LP,*
931 F.3d 1094 (11th Cir. 2019).........................................................................22

*Grigsby & Assocs., Inc. v. M Sec. Inv.,*
664 F.3d 1350 (11th Cir. 2011).....................................................................17, 18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Gutierrez v. Wells Fargo Bank, NA*,
 889 F.3d 1230 (11th Cir. 2018) ......................................................................14

*Hanson v. Experian Info. Sols., Inc.*,
 2024 WL 3509482 (N.D. Ga. July 22, 2024) ..................................................27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019) ......................................................................................1, 17

*Hilton v. Midland Funding, LLC*,
 687 F. App'x 515 (6th Cir. 2017) ..................................................................21

*In re Checking Acct. Overdraft Litig.*,
 674 F.3d 1252 (11th Cir. 2012) ......................................................................19

*Jones v. Waffle House, Inc.*,
 866 F.3d 1257 (11th Cir. 2017) .............................................2, 17, 19, 20, 27

*JPay, Inc. v. Kobel*,
 904 F.3d 923 (11th Cir. 2018) ..................................................................22, 25

*Lambert v. Austin Ind.*,
 544 F.3d 1192 (11th Cir. 2008) ......................................................................26

*Lamonaco v. Experian*,
 141 F.4th 1343 (11th Cir. 2025) ......................................2, 14, 15, 17, 18, 19

*Marie v. Allied Home Mortg. Corp.*,
 402 F.3d 1 (1st Cir. 2005) ..............................................................................24

*Martinez v. Carnival Corp.*,
 744 F.3d 1240 (11th Cir. 2014) ......................................................................19

*Massage Envy Franchising, LLC v. Doe*,
 339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ...............................................26, 29

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ............................................................................................16

# TABLE OF AUTHORITIES
(continued)

**Page**

*Oestreicher v. Equifax Info. Servs., LLC*,
2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024) .................................................27

*Parnell v. CashCall, Inc.*,
804 F.3d 1142 (11th Cir. 2015) ......................................................................19

*Pendergast v. Sprint Nextel Corp.*,
592 F.3d 1119 (11th Cir. 2010) ................................................................30, 32

*Pendergast v. Sprint Nextel Corp.*,
691 F.3d 1224 (11th Cir. 2012) ................................................................32, 33

*Plaintiff's S'holders Corp. v. S. Farm Bureau Life Ins. Co.*,
486 F. App'x 786 (11th Cir. 2012) ......................................................17, 23, 24

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ...............................................................................16, 20, 33

*S. River Watershed All., Inc. v. Dekalb Cnty.*,
69 F.4th 809 (11th Cir. 2023) .........................................................................22

*Santos v. Healthcare Revenue Recovery Grp., LLC.*,
90 F.4th 1144 (11th Cir. 2024) .......................................................................11

*SCG Harbourwood, LLC v. Hanyan*,
93 So. 3d 1197 (Fla. Dist. Ct. App. 2012) ......................................................28

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987) ........................................................................................15

*United States v. Goodall*,
21 F.4th 555 (9th Cir. 2021) ...........................................................................21

*United States v. Nasir*,
17 F.4th 459 (3d Cir. 2021) .............................................................................21

# TABLE OF AUTHORITIES
(continued)

**Page**

## Statutes

9 U.S.C. § 2.................................................................................................1, 15

9 U.S.C. § 4.................................................................................................1, 15

9 U.S.C. § 16.....................................................................................................4

15 U.S.C. § 1681..............................................................................................3

28 U.S.C. § 1331..............................................................................................3

## Rules

American Arbitration Association Rule 7 .......................................................23

Fed. R. Civ. P. 23(f)........................................................................................10

## Other Authorities

Restatement (Second) of Contracts (1981) ........................................................30

**INTRODUCTION**

This appeal turns on a straightforward proposition that the Federal Arbitration Act requires courts to honor: when parties clearly and unmistakably delegate threshold issues of arbitrability — including whether a party has waived arbitration by its litigation conduct — those issues belong to the arbitrator, not the court.  9 U.S.C. §§ 2, 4; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).  The district court departed from that mandate, denying Experian Information Solutions, Inc.'s motion to compel by deciding waiver itself, even though the governing agreements delegate that question to the arbitrator.

Reversal is compelled for two independent reasons.  *First*, under any agreement between the parties, the question of waiver was delegated to the arbitrator.  Plaintiffs Santos and Clements are Experian consumers who used CreditWorks and related services under online Terms of Use containing broad arbitration provisions with delegation clauses.  Santos enrolled in Experian's CreditWorks service in 2021 and later activated Experian Boost in June 2023, each time assenting via conspicuous clickwrap to Terms of Use that include an arbitration agreement with a delegation clause.  Clements's relationship began under Experian's 2021 CreditWorks Terms and

1

continued after Experian provided notice of the updated 2023 Terms, which she accepted by continued use under the parties' agreed change-of-terms provision. Though the plaintiffs' paths differ—one by clickwrap acceptance and one by continued use after notice—both sets of Terms contain delegation language that assigns waiver to the arbitrator.

The 2023 Terms of Use foreclose any doubt. They provide that "All issues are for the arbitrator to decide," expressly including "whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate." In *Lamonaco v. Experian*, this Court squarely held that this very delegation language "assigning to the arbitrator all disputes" over arbitrability unmistakably commits waiver to the arbitrator. 141 F.4th 1343, 1348–49 (11th Cir. 2025). Under *Lamonaco*, the district court was "obligated to honor that delegation." *Id.*

The 2021 Terms of Use compel the same result. They broadly delegate "all issues" to the arbitrator, including the "scope and enforceability" of the arbitration provision and confer "exclusive authority" on the arbitrator to resolve such disputes—language this Court has repeatedly recognized as clear evidence of delegation. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284,

2

1296–97 (11th Cir. 2022).  The district court erred by demanding "magic words" specifically naming "waiver," a requirement this Court rejects; "all means all," and waiver is a paradigmatic gateway question of arbitrability.

*Second*, even if one thought the delegations differed, both plaintiffs are bound by the 2023 Agreement, which indisputably delegates waiver. Plaintiff Santos formed a new, written clickwrap contract when he enrolled in Experian Boost in June 2023, expressly accepting the updated Terms. Plaintiff Clements agreed to those Terms by continuing to use CreditWorks after notice—conduct Florida law recognizes as valid assent under an agreed change-of-terms provision.  The district court's contrary reasoning rests on misreading amendment and notice provisions that do not bar bilateral assent to a new agreement and do not trump a severable delegation clause.

The FAA's command is clear.  The parties agreed to arbitrate arbitrability.  The district court lacked authority to decide waiver.  The order should be reversed and the case sent to arbitration as agreed.

## STATEMENT OF JURISDICTION

Clements and Santos filed suit under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, so the district court had federal-question jurisdiction under 28 U.S.C. § 1331.  *See* Doc. 1.  The district court denied

3

Experian's motion to compel arbitration on September 26, 2025.  Doc. 277 at 23.  Experian timely filed its notice of appeal on October 24, 2025.  Doc. 278.  This Court has jurisdiction to review the interlocutory order denying Experian's motion to compel arbitration under 9 U.S.C. § 16(a)(1).  *See also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 739 (2023) ("Section 16(a) authorizes an interlocutory appeal from the denial of a motion to compel arbitration.").

## STATEMENT OF THE ISSUES

**1.**     Whether, under the parties' arbitration agreements, the question of litigation-conduct waiver was clearly and unmistakably delegated to the arbitrator, requiring reversal of the district court's denial of Experian's motion to compel arbitration.

**2.**     Whether, independently, the 2023 Agreement governs Santos and binds Clements, and, because it expressly delegates waiver, requires the arbitrator to decide Plaintiffs' waiver defense.

## STATEMENT OF THE CASE

### A.     Factual Background

#### 1.     Facts Pertaining to Omar Santos

CreditWorks is an online credit-monitoring service provided by Experian.  *See* Doc. 231-1 at 3.  Plaintiff Santos enrolled in CreditWorks on

February 20, 2021. *Id.* at 4. To enroll, Santos was required to complete a webform that requested his personal information—his name, address, phone number, and email. *Id.* Once he entered that information, Santos had to click the "Create Your Account" button to enroll in CreditWorks. *Id.* Immediately below the boxes to enter his email and password was the following disclosure: "**By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy.**" *Id.* at 4, 12. The "Terms of Use Agreement" hyperlink was off-set in bold blue text and, when clicked, presents the full text of the agreement. *Id.* at 4–5. Santos manifested his assent to those terms when he clicked "Create Your Account." *Id.* at 5.

Those terms contained an arbitration agreement, the "2021 Agreement." The 2021 Agreement requires Experian and Santos "to arbitrate all disputes and claims between [them] … to the maximum extent permitted by law." *Id.* at 20–21. The agreement reinforces that it "is intended to be broadly interpreted." *Id.* at 20–21. And it contains an express delegation clause, which in relevant part states:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and

5

conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other terms of this Agreement including, but not limited to any claim that all or part of this arbitration provision or Agreement is void or voidable. However, if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.

*Id.* at 22.

On June 2, 2023, Santos logged onto his Experian account and enrolled in Boost, an additional service that CreditWorks members may elect to join. *Id.* at 5. To join Boost, Santos was required to "Accept" Experian's 2023 "Terms of Use." *Id.* at 5–6; Doc. 231-2 at 2. As before, those Terms were off-set in distinct blue text and, when clicked, present the consumer with the full terms. Doc. 231-1 at 5–6. Santos clicked the "Accept" button, thereby enrolling in Boost and agreeing to Experian's 2023 Terms of Use. *Id.*

Those terms also contained an arbitration agreement, the "2023 Agreement." Like the 2021 Agreement, the 2023 Agreement similarly compels Experian and Santos to "arbitrate all disputes and claims" and is

6

likewise "intended to be broadly interpreted." Doc. 231-2 at 9–10. It too contains a delegation clause, which in relevant part states:

> All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate, (iv) whether all or any part of this arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability, (v) any dispute regarding the payment of arbitration-related fees, (vi) any dispute related to the dispute Notice provisions in subparagraph (b) (above), and (vii) any dispute related to Mass Arbitration (defined below). Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes. However if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.

*Id*. at 11.

### 2.    Facts Pertaining to Amanda Clements

Plaintiff Clements enrolled in CreditWorks on July 12, 2019. Doc. 231-1 at 7. Clements was required to complete two webforms to enroll. Once she entered her personal information in the first form and clicked "Submit

and Continue," Clements was then presented with the second webform, in which she was required to enter her social security number, date of birth, username, and password. *Id.* Immediately below the boxes to enter and confirm her password, was the following disclosure: "**By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.**" *Id.*; Doc. 231-2 at 56. Like for Santos, the hyperlinked "Terms of Use Agreement" presented to Clements was off-set in bold blue text and, when clicked, presents the customer with the full text of the agreement. Doc. 231-1 at 7–8; Doc. 231-2 at 56. Clements manifested her assent to those terms when she clicked "Submit Secure Order." Doc. 231-1 at 8.

Those terms of use contained an arbitration agreement. Although this arbitration agreement appeared in Experian's 2019 Terms of Use Agreement (Doc. 231-2 at 60–61), it is the same arbitration agreement and delegation clause that appears in the 2021 Agreement that Santos consented to, and from which an excerpt is reprinted above (Doc. 231-1 at 22). The district court observed that the 2019 and 2021 arbitration agreements are "identical" (Doc. 277 at 3), and Plaintiffs have never sought to distinguish between those two agreements (no difference exists). Accordingly, and for the sake of

8

simplicity, Experian herein refers to the "2021 Agreement" with respect to the original arbitration agreement entered into by each of Clements and Santos.

The 2021 Agreement also contains a section entitled "Amendments," in which Clements agreed that she would be bound by the then-current Terms of Use each time she "order[ed], access[ed], or use[d]" any of the "Service[s]" described in the agreement.  Doc. 231-1 at 8–9.[1]  Use of a "Service," under any of the agreements, includes "the receipt of any alerts notifying you of changes to the information contained in your credit report(s)," including "by email."  Doc. 231-1 at 14; Doc. 231-2 at 58; Doc. 245-1 at 1.

The most recent version of the Arbitration Agreement in the CreditWorks Terms of Use became effective on April 3, 2023 (which is the same 2023 Agreement described above with respect to Plaintiff Santos).  Doc. 231-1 at 9.  Clements was (a) notified by email of the change in terms, and

---

[1] The "Amendment section" of the 2021 and 2019 Terms of Use are likewise "identical."  Doc. 277 at 3; *compare* Doc. 231-1 at 17 (2021 "Amendments" section) *with* Doc. 231-2 at 59 (2019 "Amendments" section). For the reasons just discussed, Experian continues to streamline the issues by referring to the 2021 Agreement.

(b) reminded that by continuing to use the Service and failing to opt out, she agreed to the changes. *Id*. Clements continued to use the service following this notification, thereby accepting the amended terms. *Id*. at 9–10; Doc. 245-1 at 2, 4–6.

### B.     Procedural History

Santos and Clements filed this action in 2019, alleging that Experian violated the FCRA by inaccurately reporting a status date for a debt-collection account included on their credit reports. Doc. 1 at 2. Plaintiffs seek statutory damages on behalf of a putative nationwide class of consumers. *Id*. at 1. It is Experian's position, however, that the "status date" on a debt-collection account is irrelevant to creditors, who do not use that date to grant or deny credit, which means that an inaccurate status date caused Plaintiffs and class members no concrete harm. The district court denied class certification on the basis that actual damages are an element of an FCRA claim, and that class members would be unable to establish damages, much less using class-wide proof. Doc. 147 at 9–10; Dkt. 184 (Dec. 21, 2021).

On interlocutory appeal under Federal Rule of Civil Procedure 23(f), this Court vacated the class certification decision, holding that actual

10

damages are not an element of a claim for statutory damages under the FCRA. *Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1152 (11th Cir. 2024) (per curiam). While the case was on appeal—that is, beginning May 23, 2022—the district court stayed all proceedings. *See* Dkt. 197. Briefing was complete on December 22, 2022. And oral argument was held on May 17, 2023. While a decision in this Court was pending and proceedings in the district court remained stayed, Santos signed up for Experian's Boost Service and agreed to the 2023 Agreement. *Supra* at 6.

This Court's mandate issued on February 12, 2024. Doc. 220. On February 21, 2024, the district court ordered the parties to file a status report "with proposed deadlines and a plan for disposition of the issues in the case." Doc. 221. On March 13, 2024, the Parties filed the ordered status report—their first following the issuance of this Court's mandate. Doc. 222. In it, Experian disclosed its "plan[] to file … a motion to compel arbitration." *Id*. at 12.[2] Experian highlighted, for instance, that Santos had entered into a new arbitration agreement with Experian while the Parties' appeal was

---

[2] Experian first contemplated filing a motion to compel only against Plaintiff Santos. Doc. 222 at 12. However, it subsequently expanded that plan to cover Plaintiff Clements as well.

pending, and that the arbitration agreement refers all issues to the arbitrator for decision. *Id*. at 13. The Parties proposed a briefing order for the Court and awaited its decision.

On February 19, 2025, the Court lifted the stay and reopened the case. Doc. 230.[3] Accordingly—and as it indicated it would in the ordered status report—Experian filed its motion to compel on February 24, 2025, just five calendar days after the district court reopened the case. Doc. 231. In support of its motion, Experian attached a declaration from Dan Smith, its Director of Product Operations, and eight related exhibits. Doc. 231-1, Doc. 231-2. Smith explained the Plaintiffs' enrollment in CreditWorks—and for Santos, Boost—and explained the relevant content of the Terms of Use regarding arbitration and amendment. Doc. 231-1 at 1–8. His declaration attached screenshots of how the enrollment pages appeared on each of the dates that the Plaintiffs signed up for Experian's services, as well as the text of the Terms of Use as they stood at the relevant times. Experian also filed a supplemental declaration from Smith, including additional details about

---

[3] On February 12, 2025, the Court also ordered a briefing schedule for Plaintiffs' renewed motion for class certification. Doc. 229. The Court did not initially set a briefing schedule for Experian's motion to compel arbitration.

Clements's use of Experian's services.  Doc. 241-1.  Plaintiffs opposed Experian's motion to compel, including their own declaration from Clements where she denied logging onto or visiting CreditWorks on or after the 2023 Terms came into effect.  *See* Doc. 238-1.

The district court denied Experian's motion.  Doc. 277.  The district court first highlighted that Santos and Clements agreed that they had signed at least one valid, written arbitration agreement and that an arbitrable issue exists.  Doc. 277 at 10.  But, the district court then continued to assess the parties' dispute over whether Experian waived its right to arbitrate.  That, according to the court, narrowed the dispute to three questions: (1) which arbitration agreement controls, (2) whether the operative agreement delegates questions of waiver to an arbitrator, and (3) whether Experian, in fact, waived it right to arbitrate.  *Id.* 10–11.

Taking each question in turn, the Court held that the terms of the 2021 Agreement governed, and that those terms did not delegate waiver to the arbitrator.  The Court also held that Experian had waived its right to arbitrate as to each Plaintiff.  *Id.*

Experian timely appealed.  Doc. 278.

## STANDARD OF REVIEW

The Court reviews *de novo* the denial of a motion to compel arbitration, including the district court's interpretation of the arbitration agreement and its determination that the party asserting the right to arbitrate waived that right by participating in the litigation. *Lamonaco*, 141 F.4th at 1346; *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018).

## SUMMARY OF ARGUMENT

The district court's denial of Experian's motion to compel arbitration should be reversed for two independently sufficient reasons.

**I.** Regardless of whether the 2021 Agreement or the 2023 Agreement applies, the parties clearly and unmistakably delegated threshold arbitrability issues—including litigation-conduct waiver—to the arbitrator. In *Lamonaco*, this Court definitively interpreted the text of the 2023 Agreement, holding that it delegated the question of waiver to an arbitrator. 141 F.4th at 1348. So too as to the text of the 2021 Agreement, which expressly delegates "all issues" to the arbitrator to decide, including as to the "scope and enforceability" of the arbitration agreement. Whether "Experian waived its right to arbitration by participating in litigation … was not the

14

[district c]ourt's decision to make." *Id.* Reversal is warranted on that basis alone.

**II.** Even if the 2021 Agreement did not delegate the question of waiver (and it does), the district court erred by not applying the 2023 Agreement. Plaintiff Santos formed a new and binding contract when he logged onto Experian's website, signed up for an additional service, and agreed to the 2023 Agreement. That satisfies all the requirements for contract formation under Florida law. Plaintiff Clements similarly assented to the 2023 Agreement when she continued to use Experian's services after being notified of the updated terms. She too was bound by the 2023 Agreement.

## ARGUMENT

Arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA mandates the enforcement of an arbitration agreement through "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. The statute thus establishes a judicial "duty to enforce arbitration agreements," *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987), and reflects "a liberal federal policy favoring arbitration … notwithstanding any state substantive or

15

procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

In denying Experian's motion to compel, the district court's principal error was its determination that the parties' 2021 Agreement does not delegate the question of litigation-conduct waiver to the arbitrator. Accordingly, Experian begins with that dispositive mistake. In the alternative, the 2023 Agreement—which this Court has already held delegates questions of waiver to an arbitrator—applies to each of Santos and Clements.

## I. UNDER EITHER AGREEMENT, THE PARTIES CLEARLY DELEGATED LITIGATION-CONDUCT WAIVER TO THE ARBITRATOR, REQUIRING REVERSAL.

The FAA permits contracting parties to "agree to arbitrate 'gateway' questions of 'arbitrability'" by "delegat[ing] resolution of" those gateway questions "to the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Such "gateway" or "threshold" questions address whether the dispute should proceed in court or before the arbitrator, and they may include "questions about the enforceability, scope, or applicability" of the parties' arbitration agreement. *Attix*, 35 F.4th at 1295 (citation modified). When the parties have delegated a threshold question to an arbitrator, a

district court has "no power to decide" it. *Henry Schein*, 586 U.S. at 68. "[A]bsent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024).

Whether a party has waived the right to enforce an arbitration agreement by participating in litigation is one of those threshold questions of arbitrability. This Court has therefore "made clear" that parties may agree to delegate the question of waiver, and that such a delegation "must be enforced." *Lamonaco*, 141 F.4th at 1349; *see also, e.g.*, *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1352, 1354–55 (11th Cir. 2011) (per curiam) (questions of waiver, being disputes that "involve whether a particular claim should be resolved in court or arbitration," are "presumptively for courts to resolve" absent "some agreement to the contrary"); *Plaintiff's S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012) (per curiam) (evaluating whether there was "clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver").

"[T]o determine whether the parties have manifested a clear and unmistakable intent to arbitrate gateway issues," this Court "look[s] to the wording of the delegation provision itself." *Jones*, 866 F.3d at 1267. "[A]n

17

express delegation clause" constitutes "clear and unmistakable evidence" of an agreement to arbitrate threshold questions of arbitrability.  *Attix*, 35 F.4th at 1296–97.  The two express agreements here readily fit the bill.

*2023 Agreement.*  The 2023 Agreement provides that "All issues are for the arbitrator to decide."  In the exact context of a plaintiff invoking waiver, this Court in *Lamonoco* analyzed the 2023 Agreement and held that its "delegation clause assigning to the arbitrator all disputes over the interpretation, applicability, or enforceability of the arbitration agreement" sufficed to clearly delegate arbitrability questions, including waiver.  141 F.4th at 1348.  This Court further explained that "*Grigsby* [held] that waiver is *presumptively* a question for the courts," but that "parties can overcome the default by agreeing to arbitrate threshold arbitrability issues."  *Id.* at 1349 (discussing *Grigsby*, 664 F.3d at 1353).  Finally, the Court noted that the 2023 Agreement's explicit reference to waiver made "that delegation unmistakable."  *Id.* at 1348.

After *Lamonoco*, then, there can be no doubt that under the 2023 Agreement, questions of waiver are for the arbitrator to decide.  "The District Court [is] obligated to honor that delegation."  *Id.* at 1349.

18

*2021 Agreement.* The logic of *Lamonoco* demonstrates that the 2021 Agreement similarly overcomes the *Grigsby* presumption by "agreeing to arbitrate threshold arbitrability issues." *Id.* The 2021 Agreement delegates "all" threshold questions of arbitrability to the arbitrator, stating expressly that "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision … and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision." Such a delegation is consistent with similar language that this Court has held sufficient to delegate questions of waiver to an arbitrator.[4]

Three textual features of this delegation clause eliminate any doubt as to whether the 2021 Agreement suffices to delegate questions of waiver.

---

[4] In *Jones,* this Court listed examples of language where it has found the "requisite intent" to delegate gateway issues—*i.e.*, "'any issue concerning the validity, enforceability, or scope'" of the arbitration agreement, "'any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence validity, or termination,'" and "'any issue regarding whether a particular dispute or controversy … is subject to arbitration.'" 866 F.3d at 1267 (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014); and *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (per curiam)).

19

*First*, it begins by stating, without qualification, that "[a]ll issues are for the arbitrator to decide." There is no clearer way to delegate all gateway questions of arbitrability:  An arbitration agreement that delegates "all disputes" means exactly what it says:  "all means all."  *City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1038 (11th Cir. 2023).  And if there were any doubt, the reference to the arbitrator's "exclusive authority to resolve any such dispute" is similarly comprehensive.  *See Jones*, 866 F.3d at 1267 ("[a]ny disputes means all disputes, because 'any' means all").  The issue of waiver, like all other questions of arbitrability, textually and logically, falls within the set of "[a]ll issues."

*Second*, the provision enumerates as examples of issues delegated to the arbitrator not just the "scope and enforceability of this arbitration provision," but also "any such dispute relating to the scope and enforceability of this arbitration provision," "including, but not limited to any claim that all or part of this arbitration provision … is void or voidable." These issues—scope, enforceability, and voidability—are all paradigmatic questions of arbitrability.  *See Rent-A-Ctr.*, 561 U.S. at 65, 68–69.  That clarity extends to waiver, which too is a question of arbitrability, whether it is considered as itself a matter of scope, enforceability, or voidability, or as

20

simply "relat[ed] to" those issues as an overlapping question of arbitrability. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519–20 (6th Cir. 2017) ("Because the arbitration provision states that issues related to the provision's enforceability (such as waiver) could themselves be arbitrated, Defendants were entitled to elect to arbitrate the waiver issue, and the district court should not have ruled on [plaintiff's] waiver argument."); *Creason v. Experian Info. Sols., Inc.*, 722 F. Supp. 3d 760, 765 (W.D. Ky. 2024) ("The 'scope and enforceability' of the arbitration provision are in question as a result of Creason's waiver argument, so this is among '[a]ll issues' that fall to 'the arbitrator to decide.'").

*Third*, by specifically carving out a different category of issues from the delegation clause—namely, whether the agreement permits class or representative proceedings—the contract underscores that all other facially delegated issues are for an arbitrator. That follows from well-accepted principles of contract interpretation: When an agreement sets a "general" rule but specifies "narrow exceptions," the implication is that there are no other exceptions to the rule. *United States v. Goodall*, 21 F.4th 555, 561–62 (9th Cir. 2021); *United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021) (en banc) ("As a familiar canon of construction states, *expressio unius est exclusio*

21

*alterius*: the expression of one thing is the exclusion of the other."). Taken together, their expression of an intent to arbitrate all threshold issues of arbitrability is unequivocal. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 936–37 (11th Cir. 2018) (combining reference to arbitral rules, textual references to arbitrability questions, and a broad delegation to find an "unequivocal" delegation).

The district court reasoned that the language of the 2021 Agreement contained an "ambiguity" because it did not "expressly" include the word "waiver." Doc. 277 at 19 n.8. That logic wrongly elevates *Grigsby*'s presumption into a "magic words" requirement. And this Court has consistently rejected such requirements in other contexts, holding that "agreements need not use magic words" to demonstrate "clear and unmistakable" contractual intentions. *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019); *see also, e.g.*, *S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 821–22 (11th Cir. 2023) ("Rather than looking for 'magic words,' courts should look at the provision's context" when seeking a "clear statement"); *Bearden v. E.I. du Pont de Nemours & Co.*, 945 F.3d 1333, 1338 (11th Cir. 2019) (declining to require "magic words" and instead reading a contract's "text as a whole").

22

The district court's conclusion—that the parties delegated all gateway issues except waiver—also "conflicts with how delegation agreements typically work." *Attix*, 35 F.4th at 1301. As this Court observed in *Attix*, "questions of arbitrability 'are typically delegated or preserved as a group,'" so if the parties intend to delegate some issues, but not others, to an arbitrator, they must explicitly do so. *Id.* The parties here did not agree to litigate the sole issue of waiver and delegate everything else; they delegated *all* questions of arbitrability to the arbitrator.

The district court likewise erred by placing undue reliance on this Court's decision in *Plaintiff's S'holders*, 486 F. App'x at 790. There, the panel emphasized that the party seeking to refer the dispute to arbitration in the face of a waiver argument did not point to *any* relevant contractual language. *Id.* at 789–90. Indeed, the arbitration provision of the contract made no reference to any form of arbitrability question. *See id.* at 787. Rather, it pointed only to the incorporation of the American Arbitration (AAA) Rules, which empower the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." *Id.* at 789 (quoting AAA Rule 7(a)). In the context of the parties' arguments there—and complete contractual silence as

23

to any arbitrability questions in the contract itself (*id.* at 787) — the Court held that questions of conduct-based waiver "do[] not constitute an objection to the 'validity' of the agreement as that term is used in AAA Rule 7(a)," and so there was not a clear and unmistakable delegation of conduct-based waiver. *Id.* at 790.[5]

By contrast to the contractual silence in *Plaintiff's S'holders*, the contract at issue here contains an express delegation clause, which refers "all issues" to the arbitrator to decide, including disputes over scope and enforceability. And regardless of whether they suffice on their own, the incorporation of the AAA rules (*see* Doc. 231-1 at 21–22) bolster the express contractual

---

[5] The district court's reliance on *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005) is similarly misplaced. There, the First Circuit held that the parties did not delegate questions of waiver to the arbitrator by agreeing to submit to arbitration disputes over "the arbitrability" of any claim. *Id.* at 15. The court interpreted that provision to mean simply that the parties had delegated "the question of whether a particular kind of dispute at issue falls within the scope of the arbitration clause." *Id.* In contrast to the agreement in *Marie*, the 2021 Agreement here states that "[a]ll issues are for the arbitrator to decide," and it confers the arbitrator "exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision, including, but not limited to any claim that all or part of this arbitration provision … is void or voidable." That comprehensive assignment of authority — far broader than the bare "arbitrability" reference in *Marie* — supplies the "clear and unmistakable" evidence that *Marie* itself demands when parties choose to delegate gateway issues.

24

language here.  *See, e.g., Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) ("[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").    Indeed, this Court has subsequently held that incorporation of AAA rules "serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator" and, coupled with other contractual expressions of intent, can be "unequivocal" in delegating questions of substantive and procedural arbitrability.  *JPay*, 904 F.3d at 936; *see also Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (incorporating AAA rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability issues, including the issue of waiver").

For all these reasons, the question of waiver was delegated to the arbitrator here under either agreement, and the district court erred by deciding it.  This Court should reverse on that basis alone.

## II.    INDEPENDENTLY, SANTOS AND CLEMENTS ARE BOUND BY THE 2023 AGREEMENT, WHICH EXPRESSLY DELEGATES WAIVER.

If the Court finds it necessary to decide which of the two agreements applies, the 2023 Agreement controls as to each Plaintiff.  Santos formed a new agreement with Experian when he enrolled in Boost and agreed to arbitrate his claims.  That agreement applies to the present dispute. Clements agreed to the 2023 updated terms when she continued to use Experian's services following those terms taking effect.  Her agreement similarly binds her here.

### A.    The 2023 Agreement Applies to Plaintiff Santos Because He Formed a New Contract with Experian When He Enrolled in Boost

It is undisputed that Santos, on his own volition, accessed Experian's website, logged on to his account, and signed up for Boost while his appeal in this case was pending.  Doc. 231-1 at 5.  Santos does not dispute any of these facts—and the district court accepted them.

That suffices to form a valid agreement under Florida law.[6]  *See Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App.

---

[6] State contract law governs the formation of arbitration agreements. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

2022) ("clickwrap" agreements—where a user clicks to manifest assent to a hyperlinked Terms of Use—are valid and binding); *see also Hanson v. Experian Info. Sols., Inc.*, 2024 WL 3509482, at *2, 9–11 (N.D. Ga. July 22, 2024) (concluding that Experian's "conspicuous" clickwrap agreement was valid, noting that "numerous" other courts have enforced similar agreements, and granting Experian's motion to compel arbitration).  Nor does it matter that Santos chose to enter into this new agreement with Experian without involving his counsel.  *See, e.g.*, *Jones*, 866 F.3d at 1271 (enforcing mid-litigation arbitration agreement); *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902, at *5 (E.D.N.Y. Mar. 20, 2024) ("The timing of the arbitration agreement mid-litigation does not negate a valid contract.  … Contracts can indeed be formed mid-suit[.]").

The district court, however, held that the application of the 2023 Agreement was barred as to Santos by the "Amendments" provision of the 2021 Agreement, which provides that "no unilateral amendment will retroactively modify the parties' agreed-to dispute resolution provisions of this Agreement for then-pending disputes, unless the parties expressly agree otherwise in writing."  Doc. 277 at 12 (quoting Doc. 231-2 at 59).

27

The district court's reliance on the "Amendments" provision is misplaced. That provision prohibits *unilateral* modifications to the 2021 Agreement's dispute resolution provision, a form of modification that Florida law does not recognize in any circumstance. *See SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200–01 (Fla. Dist. Ct. App. 2012) ("the unilateral modification of a contract is unenforceable"). But the 2023 Agreement was not a unilateral amendment by Experian; it was a new, bilateral agreement that Santos affirmatively and expressly entered into when he signed up for Boost. That renders the restrictions of the "Amendments" provision inapplicable.

The district court likewise erred by refusing to apply the 2023 Agreement to Santos based on that agreement's "Notice to Existing Customers" provision. Doc. 277 at 12. That provision in the Terms of Use states that "[u]nless the parties agree in writing, the modifications to the dispute resolution provisions in the Prior Version as reflected in this Agreement shall not apply to any lawsuit currently pending in any court or in any arbitration currently pending before the AAA or any other arbitration provider." Doc. 231-2 at 5. According to the district court, Plaintiff never

28

agreed to apply the dispute resolutions in the 2023 Agreement to the current litigation. Doc. 277 at 12. That's wrong.

As the "Notice to Existing Customers" provision makes clear, the 2023 Agreement "shall take effect as soon as it is posted to the Website(s), and is binding on you." Doc. 231-2 at 5. This and related clauses reveal that the 2023 Agreement can bind Experian consumers even if they do not agree in writing, *i.e.*, by continuing to use Experian's services. *See id.* at 6.

But Santos did not merely continue using Experian's services; he signed up for a new service (Boost) and accepted its new Terms of Use. Doc. 231 at 5–6. Thus, Santos did agree to the 2023 Agreement's dispute resolution terms *in writing*. "Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007). Florida courts agree: a clickwrap arbitration agreement constitutes "a valid written agreement to arbitrate." *Massage Envy*, 339 So. 3d at 484. Thus, even if Santos was required to agree to new arbitration and delegation terms in writing, he did so. Accordingly—and though it should not matter because either contract refers waiver questions to the arbitrator—Santos is bound by the 2023 Agreement's terms.

**B.    Clements Also Agreed to Be Bound by the Delegation Clause of the 2023 Agreement**

Clements is likewise bound.  Under Florida law, contracting parties may agree on the manner in which they will modify their agreement.  *E.g.*, Restatement (Second) of Contracts § 69(1)(b)–(c) (1981); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119 (11th Cir. 2010).  When Clements enrolled in CreditWorks, she agreed that she would be bound by the then-current Terms of Use each time she "order[ed], access[ed], or use[d]" any of the Services or Websites.  Doc. 231-1 at 17.

After making that agreement, Clements continued to have Experian monitor her credit and send her alerts via e-mail through her CreditWorks subscription—a Service that Experian would not have otherwise provided to Clements but for her continued enrollment in CreditWorks.  *See* Doc. 245-1 at 2; *id.* at 4–12.  Clements remains a CreditWorks member.  *Id.*  She thus accepted the 2023 Agreement.

While Clements attested that she "does not recall" ever "reading or receiving an email notification that the CreditWorks Terms of Use Agreement had been updated," Doc. 238-1 at 2, her lack of memory does not rebut Mr. Smith's attestation that such e-mail notification—which included

30

a description of the contract changes and a full-text link to the 2023 Agreement—was sent to her. Doc. 231-1 at 9; *see, e.g.*, *Garcia v. Harmony Healthcare, LLC*, 2021 WL 1610093, at *4 (M.D. Fla. Apr. 26, 2021) ("general denials based on a lack of memory" do not create an issue of fact on contract formation). Regardless, the contract that she agreed to expressly provides

> The term "Service" includes, but is not limited to, the provision of any of our products and services … regardless of the manner in which you receive the Services, whether by email or mail, through a website or mobile application, by telephone, or through any other mechanism by which a Service is delivered or provided to you.

Doc. 231-1 at 14. Thus, by having Experian monitor her credit and send her alerts, Clements used the service—even if she did not check the alerts that she had Experian send.

This Court's decision in *Pendergast* demonstrates that Clements validly accepted the April 2023 agreement by using the CreditWorks service after being provided with notice of the new terms. In *Pendergast*, the plaintiff's original 2001 agreement with Sprint had the following change of terms clause:

> We may change this Agreement at any time (but see Service Plan). Any changes to the Terms are effective when we publish the revised Terms. If you use our

31

> Services or make any payment to us on or after the effective date of the changes, you accept the changes. If you do not accept the changes, you may terminate Services (but see Termination and Changing Service Plans). For purposes of the Agreement, "use" includes keeping the right to access the Sprint PCS Network by not terminating Services.

592 F.3d at 1122. Subsequent versions of the agreement contained a materially identical clause, but also "updated arbitration and class action waiver provisions." *Id.* at 1124, 1130–31.

This Court twice reiterated that such a change of terms clause is valid and binding under Florida law. As here, "Sprint's right to modify the Terms and Conditions was dependent on Plaintiff's agreeing to the modifications by, *inter alia*, using [the service]." *Id.* at 1142. And the Court reiterated—after the Florida Supreme Court declined to exercise jurisdiction over a separate certified question—that plaintiff's "challenge to the enforceability of the changes-to-agreement clause fails." *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 n.11 (11th Cir. 2012).

Just like the plaintiff in *Pendergast*, Clements accepted the 2023 Agreement by using the service after being provided with notice of the new terms. As *Pendergast* holds, such use is sufficient consideration for the new agreement under Florida law. Although, as in *Pendergast*, Clements was

32

given right to cancel her membership and thus reject the 2023 Agreement, she did not do so. Thus, the 2023 Agreement "controls." *Id.*

In holding otherwise, the district court again misapplied the 2021 Agreement's "Amendments" section and the 2023 Agreement's "Notice to Existing Customers" section. The district court held that Clements could not agree to the 2023 Agreement because her earlier agreement barred unilateral modifications to the "dispute resolution" section. *See* Doc. 277 at 12 (quoting Doc. 231-2 at 59); Doc. 231-2 at 5–56. However, as the Supreme Court held in *Rent-A-Center*, a *delegation* clause and an *arbitration agreement* are two separate contracts. 561 U.S. at 72. Thus, a contractual restriction on amending the general "dispute resolution" provisions does not preclude modification of the distinct and severable delegation provision. This is so, even though, as was the case in *Rent-A-Center*, the delegation clause is embedded within the arbitration agreement. *Id.*

Thus, as applicable here, the "Amendments" and "Notice to Existing Customers" sections would bar the application of provisions related to Mass Arbitration—added to the 2023 Agreement—to litigation already pending when the 2023 Agreement took effect. But they would not bar amendments to the delegation clause, which are at issue here.

33

For all these reasons, Clements is bound by the 2023 Agreement's delegation clause.

## **CONCLUSION**

For all these reasons, the judgment of the district court should be reversed, and this dispute should be sent to arbitration as the Parties agreed.

Dated: January 21, 2026                    Respectfully submitted,


*/s/ Nathaniel P. Garrett*
Nathaniel P. Garrett
JONES DAY

*Counsel for Defendant-Appellee*
*Experian Information Solutions, Inc*

34

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 6,945 words, not counting the parts of the brief excluded by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Book Antiqua.


Dated:  January 21, 2026          */s/ Nathaniel P. Garrett*
                                  Nathaniel P. Garrett
                                  JONES DAY

                                  *Counsel for Defendant-Appellee*
                                  *Experian Information Solutions, Inc*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2026, I electronically filed the foregoing Opening Brief for Defendant-Appellee Experian Information Solutions, Inc., using the Court's Appellate ECF system, which will automatically send notification to counsel of record.


Dated:  January 21, 2026                      */s/ Nathaniel P. Garrett*
                                                               Nathaniel P. Garrett
                                                               JONES DAY

                                                               *Counsel for Defendant-Appellee*
                                                               *Experian Information Solutions, Inc*